### In re KENDRICK & KING LUMBER, INC., Debtor.

**Bankruptcy No. BK–81–01339.**

United States Bankruptcy Court, W. D. Oklahoma.

Oct. 22, 1981.

T. M. Weaver, Duncan, Okl., for plaintiff, Security National Bank of Duncan, Okl.

Charles C. Kelley, Oklahoma City, Okl., Trustee, pro se.

## MEMORANDUM ORDER

ROBERT L. BERRY, Bankruptcy Judge.

### Statement of the Case

On September 8, 1981, two of the debtor's creditors filed a joint application requesting this Court to order the trustee to abandon certain property of the estate. One of these creditors, the Security National Bank & Trust Company of Duncan, Oklahoma, requested abandonment of income tax refunds received by the debtor in the amount of $49,821.60 claiming a security interest therein.

On September 15, 1981, a hearing was held at which the parties appeared represented by counsel. At the conclusion of the hearing the Court ruled on all matters except the income tax refund, took that matter under advisement and invited briefs.

### Facts

On March 23, 1977, the Security National Bank & Trust Company of Duncan, Oklahoma, filed a financing statement with the County Clerk of Oklahoma County, Oklahoma, indicating Kendrick & King Lumber Co. as the debtor and covering the following property:

"Accounts Receivable, contract rights, and general intangibles presently or hereafter owing to debtor, and all proceeds and products of the same now existing or hereafter arising."

On December 16, 1980, as part of a loan transaction, Kendrick & King executed a promissory note to the bank in the amount of $410,292.38. On that same date, Kendrick & King also executed a security agreement with the bank covering, among other items, "all general intangibles of Debtor, now existing or hereafter arising."

In February of 1981, Kendrick & King amended its income tax returns for the years 1974 through 1979 inclusive and, as a result, claimed income tax refunds for those years.

On June 10, 1981, in order to renew the December 16th note, Kendrick & King executed a promissory note to the bank in the amount of $432,884.69 and a security agreement covering the same property as described in the December 16th security agreement. The bank then filed a financing statement on June 12, 1981, covering the following property:

"All inventory, contract rights, accounts receivable, general intangibles, instruments, documents of title, policies and certificates of insurance, securities and chattel paper either now owned or arising."

On July 27, 1981, Kendrick & King filed a voluntary petition under Chapter 7 of the Bankruptcy Code. Some time later, the Internal Revenue Service issued checks totalling $49,821.60 in payment of the income tax refund and which the trustee is now holding.

### Law

The bank claims that it has a valid perfected security interest in the income tax refunds. 12A Okl.St.Ann. § 9–204 provides that a security interest attaches when there is agreement that it attach and value

is given and the debtor has rights in the collateral. 12A Okl.St.Ann. § 9–110 provides that "any description of personal property or real estate is sufficient whether or not it is specific if it reasonably identifies what is described."

The trustee asserts that the phrase "general intangibles" is descriptively insufficient to cover an income tax refund. 12A Okl.St. Ann. § 9–106 defines the phrase "general intangibles" as "any personal property (including things in action) other than goods, accounts, contract rights, chattel paper, documents and instruments."

While the issue of whether the phrase "general intangibles" includes a right to an income tax refund seems to be one of first impression in Oklahoma, other courts have addressed this problem. In *In re Certified Packaging, Inc.,* 8 UCC Rep. 95 (D.Utah 1970), a bank had a security agreement with the debtor which described the collateral in part as "future accounts receivable, which term shall include . . . general intangibles . . . as . . . defined in the Uniform Commercial Code." The financing statement subsequently filed by the bank, however, did not contain the phrase "general intangibles." In ruling that the security agreement was sufficient to create a security interest in an income tax refund but that the financing statement was insufficient to perfect that security interest, the court said:

> "Subsequent to the end of its fiscal year, it [the debtor] had a money claim against the United States which was pending and unliquidated as of the date creditors filed the initiating petition herein. Such chose in action was liquidated and determined after the petition was filed herein and the proceeds from such pending chose in action came into possession of Trustee.

> "Now, as between bankrupt and the bank, the underlying security document of December 4, 1967 (as distinguished from the "financing statement") was sufficiently broad and embrasive to include within its terms a chose in action against the United States. As between bankrupt

and the bank, the bank's security interest "attached" to the pending chose in action at the moment the chose in action came into existence. The narrow but critical question is not whether the security interest "attached" as between bankrupt and creditor but is whether such security interest was *perfected* as against Trustee.

> \*   \*   \*   \*   \*   \*

> "In this case, the financing statement as filed conveys a standard message. It asserts no claim to either the item of property in dispute—"the claim pending for an income tax refund and the proceeds resulting therefrom," nor the type or class of property which would embrace a pending chose in action, namely "general intangibles."

> "Applicant has failed to "perfect" its security interest in the tax refund claim and resulting proceeds. . . ."

Thus, the court ruled that a security interest in an income tax refund did attach between the parties because the security agreement contained the term "general intangibles" but that the interest was unperfected because the financing statement failed to contain such term. See also *In re Kingswood,* 343 F.Supp. 498 (C.D.Calif. 1972), which stated that, under California law, "an income tax refund has been held to be a general intangible".

■ The trustee also asserts that if the bank did acquire a security interest in the tax refund, such acquisition would be a voidable preferential transfer under 11 U.S.C. § 547. Section 547 allows a trustee to avoid transfers to a creditor on account of an antecedent debt, made while the debtor was insolvent and within 90 days before the date the bankruptcy petition was filed. Under § 547(f) a debtor is presumed insolvent during the 90 days immediately preceding the petition's filing date. § 547(e)(2)(A) specifies that a transfer is "made" at the time it takes effect between the transferor and the transferee if it is perfected at or within 10 days after such time. However, § 547(e)(3) provides that "a transfer is not made until the debtor has acquired rights in the property transferred."

The trustee states in his brief that prior to the issuance of the tax refund checks, which were dated one day after the bankruptcy petition was filed, the debtor's right to any tax refund was merely an inchoate and contingent right. His argument seems to be that until the refund checks were issued, the debtor had no rights in the refund as would meet the above stated requirements of § 547(e)(3) and thus the "transfer" could not have taken place before the 90-day prepetition period.

This Court does not agree. § 70(a)(5) of the former Bankruptcy Act provided that "property, including rights of action, which prior to the filing of the petition he [the debtor] could by any means have transferred" passed to the trustee. In *Segal v. Rochelle*, 336 F.2d 298 (5th Cir. 1964), affirmed 382 U.S. 375, 86 S.Ct. 511, 15 L.Ed.2d 428 (1966), the bankrupts incurred business losses during the same taxable year in which their bankruptcy petition was filed. After the close of the year, loss-carryback tax refunds were sought and obtained from the United States. The bankrupts contended that they were entitled to the refunds. They argued that their rights in the refund only accrued after the date of bankruptcy since applications for refunds, resting as they must on the results of the whole taxable year, could not have been filed until the end of the year. The Court of Appeals, however, rejected this argument saying:

> "... we hold that an inchoate right to receive a loss-carryback refund is 'property', and that it is property which the bankrupt could 'by any means have transferred' within the meaning of § 70, sub. a(5) of the Bankruptcy Act. Consequently, the refund proceeds belong to the trustee."

Turning to the legislative history of the present Bankruptcy Code, House Report 95–595, 95th Cong., 1st Sess., states at p. 367, U.S.Code Cong. & Admin.News 1978, pp. 5787, 6323 with regard to 11 U.S.C. § 541:

> "This section defines property of the estate, and specifies what property be-comes property of the estate. The commencement of a bankruptcy case creates an estate. Under paragraph (1) of subsection (a), the estate is comprised of all legal or equitable interest of the debtor in property, wherever located, as of the commencement of the case. The scope of this paragraph is broad. It includes all kinds of property, including tangible or intangible property, causes of action (see Bankruptcy Act § 70a(6), and all other forms of property currently specified in Section 70a of the Bankruptcy Act § 70a, ... The result of *Segal v. Rochelle*, 382 U.S. 375 [86 S.Ct. 511, 15 L.Ed.2d 428] (1966), is followed, and the right to a refund is property of the estate."

Applying the reasoning of *Rochelle* to the instant case, this Court is of the opinion that Kendrick & King had a transferable right in the income tax refunds prior to the commencement of the 90-day prepetition period.

This Court has also considered the fact that the financing statement upon which the bank relies was filed in 1977 while the security agreements were not executed until 1980 and 1981. 12A Okl.St.Ann. § 9–303 states that a security interest is perfected when it has attached and when all of the applicable steps required for perfection have been taken. It also provides, "If such steps are taken before the security interest attaches, it is perfected at the time when it attaches."

The case of *In re Gilchrist Co.*, 16 UCC Rep. 1384 (E.D.Penn.1975) contains a most excellent analysis of case law on this point and contains the following quote from the Final Report in 1971 of the Review Committee for Article 9 of the Permanent Editorial Board for the Uniform Commercial Code:

> "... an appropriate financing statement may perfect security interests securing advances made under agreements not contemplated at the time of the filing of the financing statement, even if the filing of the advances then contemplated have been fully paid in the interim. Under the notice-filing procedures of the Code, the filing of a financing statement

is effective to perfect security interest as to which the other required elements for perfection exist, whether the security agreement involved is one existing at the date of the filing with an after-acquired property clause or a future advance clause, or whether the applicable security agreement is executed later . . . "

In that case the court ruled that a financing statement first filed in 1959, and kept current by timely filed continuation statements, properly perfect a security interest conveyed in 1974 even though there had been no previous security interests in effect since 1972.

### Conclusion

In consideration of the foregoing findings of fact and legal authorities, this Court concludes that the Security National Bank & Trust Co. of Duncan, Oklahoma, has a valid perfected security interest in the income tax refunds and that such security interest is not voidable as being a preferential transfer under 11 U.S.C. § 547. The trustee is therefore directed to surrender to said bank all property in his possession representing such refund.

IT IS SO ORDERED.