In the Matter of JEFFERSON MORT-
GAGE CO., INC., Debtor.

David H. MARKOWITZ, Trustee,
Plaintiff,

v.

HERITAGE BANK, N.A., Defendant.

Bankruptcy No. 81–05647.
Adv. No. 81–0610.

United States Bankruptcy Court,
D. New Jersey.

Dec. 23, 1982.

Archer, Greiner & Read, by Nona L. Ostrove, Haddonfield, N.J., for Heritage Bank, N.A.

Davis & Reberkenny, by Arthur J. Abramowitz, Cherry Hill, N.J., for David H. Markowitz, Trustee.

## OPINION

WILLIAM LIPKIN, Bankruptcy Judge.

The Debtor herein, Jefferson Mortgage Co., Inc., filed a voluntary Petition for Relief under the provisions of Chapter 7 of the Bankruptcy Code on September 22, 1981.

Plaintiff David H. Markowitz, the Trustee for Debtor Jefferson Mortgage Co., Inc., filed a complaint against the Heritage Bank (Bank) seeking a judgment against the Bank for 2 sums of money which were allegedly improperly transferred during the 90-day preference period contrary to section 547 of the Bankruptcy Code. One sum was a tax refund owed to the debtor in the amount of $101,219.99; the other was in the amount of $28,193.17 held in an account in the Bank and was set off by the Bank on the day the debtor's petition was filed. Although the parties have not stipulated any facts in this case, both have moved for summary judgment. The Trustee also argues, in the alternative, that there is a material question of fact as to at least one aspect of this litigation which would preclude summary judgment.

The following facts appear in the record as set forth in affidavits or exhibits submitted by the parties. Jefferson Mortgage and the Bank executed a Repurchase Agreement and a Warehouse Agreement on September 30, 1980 whereby Jefferson obtained financing from the Bank and pledged assignments of mortgages as security. Jefferson subsequently defaulted on its payments. As a result of the default, they entered into an agreement dated March 13, 1981 whereby Jefferson acknowledged its indebtedness to the Bank in the amount of $6,826,019.69. In partial satisfaction of this debt, Jefferson Mortgage assigned or transferred certain mortgage loans to the Bank. Jefferson Mortgage also signed a promissory note payable to the Bank for the remaining amount due, in the amount of $1,001,891.77.

To secure payment of this promissory note Jefferson Mortgage granted the Bank a security interest in the following assets:

all assets owned by Jefferson, including furniture, office equipment, cash, accounts receivable, contract rights, franchises and agency rights, <u>income tax and other tax refunds</u>, refunds of unpaid insurance premiums, mortgages, rights under agreements to service mortgage loans, and all other property of every kind and description, together with all accessories, substitutions, additions, replacements, parts and accessions affixed to or used in connection with such collateral, and proceeds thereof. (underlining added).

A financing statement covering all this collateral was filed in the Office of the New Jersey Secretary of State on March 24, 1981. A box on this statement was checked indicating that proceeds of the collateral were also covered. The Trustee does not appear to challenge the technical requirements for perfection of this collateral, such as the place of filing or the debtor's name, address and signature. N.J.S.A. 12A:9–401. Thus, the Bank's debt was perfected as to the collateral listed in the security agreement and financing statement at all times here relevant.

The Bank's agent admitted that ninety days prior to the filing of the Petition, which date would be June 24, 1981, Jefferson Mortgage owed the Bank the sum of $1,001,891.77. It is also agreed that one day after the filing of the Petition, Jefferson Mortgage owed the Bank the sum of $448,-169.60. On September 18, 1981, which was four days before the filing of its Petition, Jefferson Mortgage received a federal income tax refund in the amount of $101,-219.00 and immediately transferred this refund to the Bank. As stated above, the debtor then filed its Petition under Chapter 7 of the Bankruptcy Code on September 22, 1982 at 11:53 a.m. Also on September 22, 1982 at 10:35 a.m. the Bank set off the sum of $28,193.17 which was being held in the debtor's account at the Bank. Bank records indicate that this amount was list posted on September 23, 1981.

It is not clear from the record what other transfers during the 90-day period before the filing caused the reduction in the indebtedness of Jefferson Mortgage to the Bank in the sum of $553,722.17. However, these other payments or transfers are not at issue here.

The Trustee claims that the $100,219.00 tax refund and $28,193.17 should be returned to the estate. As to the tax refund, the Trustee claims that: 1) the debtor's payment of the tax refund to the Bank on September 18, 1981 was a "transfer" within the 90-day preference period under Section 547(e)(3) of the Bankruptcy Code; 2) the receipt of the tax refund by the Bank enabled it to receive more than it would have otherwise received under the Bankruptcy Code; 3) there was no valid assignment of the debtor's tax refund because the federal statute, 31 U.S.C.A. § 203, requiring such written assignment was not complied with, and 4) the protections of Section 547(c)(5) are not available to the Bank because the Bank could not obtain a floating lien in the tax refund. As to the setoff, the Trustee argues that the Bank had no perfected security interest in the debtor's bank account and received more by setting off the sum than it would have under the applicable Bankruptcy Code provisions. The Trustee

agrees that none of the above questions raise an issue of fact which would preclude summary judgment.

In the alternative, the Trustee argues that there is an issue of material fact precluding summary judgment, as to whether the Bank is an "insider" under the terms of Section 547(b)(4)(B). However, he does not specify as to why this would be relevant.

Bankruptcy Rule 756 provides: "Rule 56 of the Federal Rules of Civil Procedure applies in adversary proceedings." F.R.C.P. 56(c), concerning the standard for a summary judgment, provides in part:

The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

The only facts which are in dispute concern the Bank's status as an "insider", and those will be discussed later.

The Trustee's initial arguments are based on the following portions of Section 547(b) of the Bankruptcy Code:

(b) Except as provided in subsection (c) of this section, the trustee may avoid any transfer of property of the debtor—

(1) to or for the benefit of a creditor;

(2) for or on account of an antecedent debt owed by the debtor before such transfer was made;

(3) made while the debtor was insolvent;

(4) made—

(A) on or within 90 days before the date of the filing of the petition; or

(B) between 90 days and one year before the date of the filing of the petition, if such creditor, at the time of such transfer—

(i) was an insider; and

(ii) had reasonable cause to believe the debtor was insolvent at the time of such transfer; and

(5) that enables such creditor to receive more than such creditor would receive if—

(A) the case were a case under chapter 7 of this title;

(B) the transfer had not been made; and

(C) such creditor received payment of such debt to the extent provided by the provisions of this title.

The application of this statute is explained in the Legislative History as follows:

Subsection (b) is the operative provision of the section. It authorizes the trustee to avoid a transfer if five conditions are met. These are the five elements of a preference action. First, the transfer must be to or for the benefit of a creditor. Second, the transfer must be for or on account of an antecedent debt owed by the debtor before the transfer was made. Third, the transfer must have been made when the debtor was insolvent. Fourth, the transfer must have been made during the 90 days immediately preceding the commencement of the case. If the transfer was to an insider, the trustee may avoid the transfer if it was during the period that begins one year before the filing of the petition and ends 90 days before the filing, if the insider to whom the transfer was made had reasonable cause to believe the debtor was insolvent at the time the transfer was made.

Finally, the transfer must enable the creditor to or for whose benefit it was made to receive a greater percentage of his claim than he would receive under the distributive provisions of the bankruptcy code. Specifically, the creditor must receive more than he would if the case were a liquidation case, if the transfer had not been made, and if the creditor received payment of the debt to the extent provided by the provisions of the code.

The phrasing of the final element changes the application of the greater percentage test from that employed under current law. Under this language, the court must focus on the relative distribution between classes as well as the amount that will be received by the members of the class of which the preferee is a member. . . .

[House Report No. 95–595, 95th Cong., 1st Sess. 372 (1977); Senate Report No. 95–989, 95th Cong., 2d Sess. 87 (1978), U.S.Code Cong. & Admin.News 1978, pp. 5787, 5873, 6328.]

■ In making his argument that payment of the tax refund was a preferential transfer, the Trustee has the burden of proof that all elements of the statute have been satisfied. *In Re K. Pritchard Co.,* 17 B.R. 508 (Bkrtcy.S.D.Ala.1981); *In Re Purbeck & Associates, Ltd.,* 12 B.R. 406 (Bkrtcy.Conn.1981). It appears that the parties agree that the following requirements of Section 547 are present here, because they have not been raised as disputed issues: 1) the payment of the tax refund was a transfer to the creditor-bank;[1] 2) it was made on account of an antecedent debt owed by the debtor; 3) it was made while the debtor was insolvent, and 4) it was made during the 90-day period prior to filing.

However, not all transfers made within this period are preferential. In order to be a preference, a "transfer" within the 90-day period before filing for bankruptcy must "enable the creditor to or for whose benefit it was made to receive a greater percentage of his claim than he would receive under the distributive provisions of the bankruptcy code." 11 U.S.C. § 547(b)(5); see Legislative History cited above.

Although the Trustee claims that the receipt of the tax refund by the Bank enabled it to receive more than it would have otherwise received under the Bankruptcy Code,

---

**1.** Although there appears to be a facial dispute as to whether a "transfer" occurred on March 24, 1981, when the security interest was perfected, or on September 18, 1981, when the debtor turned over the tax refund to the Bank, the real dispute appears to be only whether any transfer which occurred was preferential under § 547. In view of this, the court will assume that the events on both March 24, 1981 and September 18, 1981 were transfers.

the basis for this argument is not clear given the perfected status of the Bank's security interest in any tax refunds owing to the debtor. The Trustee does not attack the financing statement but argues that the Bank's interest in the tax refund was impaired under Section 547(c)(5). That section does not allow a Trustee to avoid a transfer of a perfected security interest in *inventory or a receivable* or the proceeds of either *except* to the extent there is an improvement in position as a result of the floating liens.

■ However, it is clear that Section 547(c)(5) does not apply in the present case. That provision in the statute concerns a security interest in inventory or accounts receivable, neither of which is at issue here. The collateral here is a tax refund, which was specifically listed as such on the security agreement and financing statement and, as will be discussed, *infra,* can be categorized as a "general intangible" chattel. In addition, there is no need to even reach a discussion of § 547(c) because the requirements of § 547(b) must be met as a prerequisite for the application of this statute. If the Trustee cannot prove that a transfer within the 90-day period was "preferential" in that it enabled a creditor of a certain class to receive more than he would otherwise, the transfer cannot be avoided and § 547(c) is not relevant. The only logical way to read § 547(c) is that it is an additional reason for avoiding a transfer given that all the requirements of § 547(c) have occurred. Section 547(c)(5) concerns itself with the floating lien associated with accounts receivable that fluctuate during the 90-day period whereby creditors could benefit during the 90-day period at the expense of other creditors if the creditor improved its position during that period of time. Thus, there has been no demonstration that the pledge of the tax refunds falls within the type of activity which calls for application of Section 547(c)(5).

■ If the Bank has properly perfected its security interest in the tax refund, the transfer of the refund to it during the 90-day period was not preferential because the requirements of § 547(b)(5) have not been met. The case of *In Re Kendrick & King Lumber, Inc.,* 14 B.R. 764 (Bkrtcy.W. D.Okl.1981), has facts very similar to the present case. A creditor-bank loaned the debtor money and filed a financing statement covering accounts receivable, contract rights, general intangibles and proceeds thereof in 1977. The debtor borrowed additional money in December 1980 and executed a security agreement covering all general intangibles, now existing or hereafter arising, which was properly perfected. On June 10, 1981 the debtor executed a promissory note to renew its prior indebtedness and the bank filed a financing statement on June 12, 1981 covering inventory, contract rights, accounts receivable, general intangibles, instruments, documents of title, insurance policies, and securities now owned or arising in the future. On July 27, 1981 the debtor filed a petition under Chapter 7 of the Bankruptcy Code. Thereafter, the Internal Revenue Service issued tax refund checks to the debtor as the result of amended income tax returns filed in February 1981 relating to the taxable years 1974 through 1979.

The Bank claimed that it had a valid perfected security interest in the tax refund as a "general intangible," and thus was entitled to the amount of the tax refund. The court held that the right to an income tax refund is a "general intangible" within the meaning of the Uniform Commercial Code and was properly perfected as against the Trustee. The court also held that there was no preferential transfer because the debtor had a transferable right in the income tax refunds prior to the commencement of the 90-day prepetition period.

Thus, the Bank was entitled to the income tax refund because it had a perfected security interest covering general intangibles under state law prior to the preference period specified under federal law. The Bank was awarded the tax refund because it was getting only that to which it was otherwise entitled under the Bankruptcy Code as a creditor with a secured claim. As long as a creditor properly perfects its se-

curity interest before the 90-day preference period, the date of mailing or receipt of the tax refund is not a preferential transfer, even if it can be termed a "transfer". In the instant case the security agreement and perfecting instruments went further and specifically mentioned "tax refunds".

The case of *In Re Certified Packaging, Inc.,* 8 U.C.C.R.S. 95 (D.Utah 1970), also held that the proper way to perfect a security interest in an income tax refund is as a "general intangible". In that case the creditor did not properly perfect its security interest in a tax refund because its financing statement did not cover "general intangibles" or "tax refunds".

Thus, that case is distinguishable from the present one because the Bank here filed its financing statement specifically covering tax refunds. Under the New Jersey Uniform Commercial Code, a tax refund is also in the category of a general intangible. N.J.S.A. 12A:9–106. The financing statement was properly filed in the office of the New Jersey Secretary of State. N.J.S.A. 12A:9–401(1)(c). The Trustee does not challenge any of the formal requisites of the financing statement, and this court finds that the formal requisites have been met. N.J.S.A. 12A:9–402. Since the Bank took all the necessary steps for perfection of its security interest and filed its financing statement on March 24, 1981, which was more than 90 days before the debtor filed its Petition, the Bank did not receive more than it otherwise would have, to the detriment of any unsecured creditors. This court agrees with the holding in *In Re Kendrick & King Lumber, Inc.,* supra, that the mere receipt of the income tax refund is irrelevant as long as the security interest in the tax refund is perfected before the 90-day preference period. Therefore, the mere payment of a tax refund within the preference period is not a preferential transfer by itself. It would only be preferential if a secured party had not perfected its interest more than 90 days before the filing of the petition.

The Trustee argues that there was no valid assignment of the tax refund to the Bank because the federal statute requiring such an assignment, 31 U.S.C. § 203, was not complied with. The Bank concedes that it has no written assignment and even attempted to obtain such an assignment before the filing of the debtor's Petition.

■ However, the claim at issue here is a dispute between the Trustee and a creditor and does not involve the United States Government. This court finds very persuasive those Circuit Court opinions which hold that the assignment statute was enacted for the benefit of the United States Government and is not applicable in cases in which the Government is not involved. *King v. Gilbert,* 569 F.2d 398 (5 Cir.1978); *In Re Freeman,* 489 F.2d 431 (9 Cir.1973). This issue is not necessary for determination here, because an assignment or lack thereof will not change the result here. The Bank's right to the tax refund arose as a result of its perfected security interest and not from an assignment of the refund. Even if the debtor had refused to "assign" the tax refund by handing it over to the Bank when received, the Bank would have had a right to payment by virtue of its perfected security interest. There is no exception in the Uniform Commercial Code for the assignment of federal claims; nor is there any indication in the federal statute that it is controlling to the exclusion of state law, because there is no reason for the federal law to apply when the United States Government is not involved in a claim and when the claim deals solely with the state-law issue of perfection of a security interest between private parties.

■ The final argument raised by the Trustee in opposition to a grant of summary judgment in favor of the Bank on the tax refund is that there is a factual dispute as to whether the Bank is an "insider" under section 547(b)(4)(B). Although the Trustee's discussion of this issue is vague, it appears that he is attempting to avoid the perfection of the Bank's security interest by the filing of its financing statement on March 24, 1981. If this perfection is avoided, the Bank would only have the status of a creditor with an unsecured claim and the

Trustee would have a superior right to the refund. 11 U.S.C. § 544(a).

However, the Trustee presents no affidavits or other evidentiary material to support its position but merely states: "Clearly, the depositions of James A. Smedley and Richard Gallaudet raise factual issues with regard to issues of the insider status of the defendant." The Trustee presents no itemization of which of their statements raise a factual question. This failure raises an issue specified in F.R.C.P. 56(e), which reads in part:

When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of his pleading, but his response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If he does not so respond, summary judgment, if appropriate, shall be entered against him.

This paragraph was added to the Rule by an amendment promulgated in 1963, which is explained in the comment following the rule as follows:

The last two sentences are added to overcome a line of cases, chiefly in the Third Circuit, which has impaired the utility of the summary judgment device. A typical case is as follows: A party supports his motion for summary judgment by affidavits or other evidentiary matter sufficient to show that there is no genuine issue as to a material fact. The adverse party, in opposing the motion, does not produce any evidentiary matter, or produces some but not enough to establish that there is a genuine issue for trial. Instead, the adverse party rests on averments of his pleadings which on their face present an issue. In this situation Third Circuit cases have taken the view that summary judgment must be denied, at least if the averments are "well-pleaded," and not supposititious, conclusory, or ultimate.... [citations omitted]

The very mission of the summary judgment procedure is to pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial. The Third Circuit doctrine, which permits the pleadings themselves to stand in the way of granting an otherwise justified summary judgment, is incompatible with the basic purpose of the rule. See 6 Moore's Federal Practice 2069 (2d ed. 1953); 3 Barron & Holtzoff, supra, § 1235.1.

It is hoped that the amendment will contribute to the more effective utilization of the salutary device of summary judgment.

The amendment is not intended to derogate from the solemnity of the pleadings. Rather it recognizes that, despite the best efforts of counsel to make his pleadings accurate, they may be overwhelmingly contradicted by the proof available to his adversary.

With the adoption of this Rule amendment it seems clear that allegations in pleadings may not be sufficient to withstand a summary judgment motion, especially where the pleadings themselves are not specific. The Third Count of the Trustee's Amended Complaint provides only the following reference to "insider" status: "12. Between 90 days and one year before the date of the filing of the petition, the defendant was an insider."

This court's task was made unnecessarily more difficult by the Trustee's failure to provide its own affidavits and failure to specify, even in its briefs, precisely what factual disputes it is relying upon for this argument. After a careful perusal of the depositions of Smedley and Gallaudet, as well as all the other material in this file, I must conclude that there is no issue of fact in dispute which is material to the issues before this court. This involves a mixed question of law and fact because not only must there be a factual dispute as to the Bank's status as an "insider" but the facts presented must also demonstrate that the issue of insider status is relevant and material as to whether a preferential transfer occurred.

The term "insider" is defined in Section 101(25) of the Bankruptcy Code as follows:

(25) "insider" includes—

. . . .

(B) if the debtor is a corporation—

(i) director of the debtor;

(ii) officer of the debtor;

(iii) person in control of the debtor;

(iv) partnership in which the debtor is a general partner;

(v) general partner of the debtor; or

(vi) relative of a general partner, director, officer, or person in control of the debtor;

Although this list is not all-inclusive, it has been held to refer to someone who has a sufficiently close relationship with a debtor whereby his conduct is subject to closer scrutiny than those who deal at arms length with the debtor. *Matter of Montanino,* 15 B.R. 307 (Bkrtcy.N.J.1981); 4 Collier on Bankruptcy 547–17, note 4 (15th ed. 1982).

The Trustee has not cited any cases, nor can this court find any, in which a creditor was held to be an "insider" for purposes of Section 547 of the Bankruptcy Code merely by reason of being a creditor. Perhaps § 101(25)(B)(iii) might apply if the creditor was a "person in control of the debtor," but that fact has not been established in this case to the point where it satisfies Rule 56, as raising a material fact.

A creditor and debtor relationship, such as was present here, requires that an obligation or debt be owing. Under the normal connotation, this relationship is an arms-length transaction. Even though the Bank may have obtained some concessions from the debtor based on the loan transaction between them, there is not a scintilla of evidence in the depositions that these concessions rose to the level of a special relationship which would characterize the Bank as an "insider" for purposes of § 547. The Trustee's allusion to the Bank's "control" of the debtor is not sufficient under the facts of this case. The Bank may have exercised some measure of control over the debtor financially in order to protect its collateral. However, this control was merely incident

to their creditor-debtor relationship. The creditor had only financial power over the debtor, and the debtor could have terminated the relationship at any time and looked for another creditor.

There have been no facts presented to this court which demonstrate a dispute of a material or relevant fact concerning the Bank's insider status. As a matter of law, the parties' relationship was one of an arms' length debtor-creditor relationship.

■ The remaining sum of money sought by the Trustee is the sum of $28,193.17 which was set-off by the Bank on the date the debtor filed its Petition. The Trustee claims that this set-off violated Section 553 of the Code, as an improvement in position, because the debtor owed the Bank the sum of $1,001,891.77 90 days before the filing and the sum of $448,169.60 as of the date after the filing of the Petition. The Bank counters that this reduction in the debt owed by Jefferson Mortgage resulted from the sale of properties on which the Bank had a previous lien and thus, did not improve its position but merely obtained what it would have anyway. The Trustee does not discuss the improvement in position test as applied to the sum of money on deposit at the Bank 90 days before the filing as compared with the day of filing.[2]

The relevant provisions of Section 553 provide as follows:

(b)(1) Except with respect to a setoff of a kind described in section 362(b)(6) or 365(h)(1) of this title, if a creditor offsets a mutual debt owing to the debtor against a claim against the debtor on or within 90 days before the date of the filing of the petition, then the trustee may recover from such creditor the amount so offset to the extent that any insufficiency on the date of such setoff is less than the insufficiency on the later of—

(A) 90 days before the date of the filing of the petition; and

---

**2.** See 4 *Collier on Bankruptcy* 553–45 (15th ed. 1982), for a discussion of set-offs concerning bank deposits.

(B) the first date during the 90 days immediately preceding the date of the filing of the petition on which there is an insufficiency.

(2) In this subsection, "insufficiency" means amount, if any, by which a claim against the debtor exceeds a mutual debt owing to the debtor by the holder of such claim.

A practical example of the application of this statute is given in 4 *Collier,* supra, at 553–46:

As another example suppose that on the 90th day prior to bankruptcy the debtor comes to the bank and receives a $12,000 loan to be repaid in 3 monthly installations of $4,000. The debtor opens a bank account on the 90th day before bankruptcy with a balance of $2,000. Thus the insufficiency on the 90th day before bankruptcy is $10,000. On the 60th day before bankruptcy the debtor pays $4,000 on the loan reducing the debt owed to the bank to $8,000. (Assume the repayment falls within 547(c)(2) and is not preferential). On the 30th day before bankruptcy the debtor pays only $3,000 on the loan due to cash flow problems. On the 29th day before bankruptcy the bank declares an event of default, accelerates the debt and set off the $2,000 in the bank account. The insufficiency on the date of setoff was $3,000 ($5,000–$2,000). The improvement in position is $7,000 ($10,000–$3,000). But the trustee may also recover $2,000 which was the amount offset; section 553(b)(1) does not authorize recovery in excess of the amount offset. Of course the trustee may recover the $3,000 paid on the 30th day before bankruptcy as a preference if the requirements of section 547 are met.

See also *Ohio-Erie Corp. v. Bancohio National Bank,* 22 B.R. 340, 9 B.C.D. 430 (Bkrtcy.N.D.Ohio 1982); *Donato v. Dominion National Bank,* 17 B.R. 708 (Bkrtcy.E.D. Va.1982), and *Duncan v. First Heritage Bank,* 10 B.R. 13, 6 B.C.D. 1310 (Bkrtcy. Tenn.1980), where the "improvement in position" test was applied to bank set-offs.

In the present case, there is no question that the Bank and the debtor each had mutual claims against the other which arose pre-petition. The Bank's set-off occurred pre-petition, and therefore was not subject to the automatic stay of Section 362 of the Code.

Ninety days before the filing of the debtor's petition, there was an "insufficiency" of $913,891.77, because this is the amount by which the claim *against* the debtor (which was $1,001,891.77) exceeded the mutual debt owing to the debtor by the Bank (which was "in excess of $88,000"). The insufficiency on the date of set-off by the Bank was $448,169.60, which the parties agreed was the sum owed to the Bank after the date of the set-off. Thus, the insufficiency on the date of set-off was $465,722.17 less than the insufficiency on the date 90 days before the date of the filing of the petition (i.e. $913,891.77–$448,169.60). Thus, the Trustee would be entitled to recover the amount of any offset made within this 90-day period up to the amount of $465,722.17. Since the off-set made was only in the amount of $28,193.17, the Trustee can only recover this amount.

The Bank's argument that the decline in the debt owed by Jefferson Mortgage was reduced from $1,001,891.77 to $448,169.60 only because of the collection of other obligations on which the Bank had a lien, has no relevance to the analysis under Section 553(b) of the Code. There is no exception under the statute for the collection of secured claims, and the Bank cites no authority for this proposition. Thus, this argument is meritless.

■ Nor is there any basis to hold that the Bank had a perfected security interest in the money on deposit in the debtor's account, which would allow it to keep the money set-off regardless of § 553(b). A bank cannot obtain a perfected security interest over money on deposit merely by maintaining "possession" of it. *Cissell v. First National Bank of Cincinnati,* 476 F.Supp. 474, 491 (S.D.Ohio 1979). The filing of a financing statement under Article 9 of the Uniform Commercial Code which

lists "cash" as collateral also does not reach money in a bank account, because N.J.S.A. 12A:9–104(k) specifically excludes "any deposit, savings, passbook or like account maintained with a bank, savings and loan association, credit union or like organization." The Bank makes no argument that it had a perfected security interest in the money on deposit because it could be "traced" as proceeds of accounts receivable, or proceeds of some other collateral in which the Bank had a perfected security interest. Thus, the Bank did not have a perfected security interest in the funds on deposit in the debtor's account, and improved its position by setting off the sum within 90 days of the filing of the Petition.

In conclusion, the Bank's motion for summary judgment is granted in part as to the sum of $101,219.99 and denied in part as to the remaining sum. The motion of Jefferson Mortgage for summary judgment shall be granted in part in the sum of $28,193.17, and denied as to the tax refund and the question of the Bank's insider status. As a matter of law, there is no issue of material fact which would require further proceedings to determine an "insider" relationship. An order shall be submitted in accordance with this opinion.