**In re SCHERBENSKE EXCAVATING, INC., Debtor.**

**Bankruptcy No. 82–05389.**

United States Bankruptcy Court,
D. North Dakota.

Feb. 8, 1984.

James D. Geyer, Dickinson, N.D., for Fisher Sand and Gravel.

Max Rosenberg, Bismarck, N.D., for First Bank of Jamestown.

David Johnson, Fargo, N.D., for debtor.

Jon Brakke, Fargo, N.D., for Dakota First Trust Co.

William Westphal, Minneapolis, Minn., U.S. Trustee.

## ORDER

WILLIAM A. HILL, Bankruptcy Judge.

Before the Court is a Motion filed by the Debtor on January 17, 1983, seeking authority to (a) pay the IRS the Debtor's North Dakota tax refund in the amount of $20,403.54 and (b) to pay over to First Bank of North Dakota—Jamestown (Bank) monies deposited into the Court by Ames Construction, Inc. in the amount of $27,795.87. Fisher Sand & Gravel Company (Fisher) and Dakota First Trust Company (Dakota) claim an interest in the sums and have raised objections to the proposed manner of disbursement. The United States Trustee has also raised an objection.

A hearing was held before Judge Harold O. Bullis on March 11, 1983, and shortly thereafter all interested parties submitted briefs on the issues raised, and the matter was taken under advisement. A review of the file and records indicates that the facts are not in dispute and resolution of this Motion turns on questions of law which have been amply addressed in the briefs. These facts and the parties' respective positions may be summarized as follows:

The Debtor was a subcontractor for Ames Construction, Inc. on a road project undertaken in June of 1981. Unable to properly perform, the Debtor was replaced by Fisher who completed the subcontract work and in connection therewith furnished equipment and materials to the project in the sum of $12,566.35. An agreement was

reached in March of 1982 between these three parties whereby, in exchange for Fisher's lien waiver, Ames agreed to issue a joint check to Fisher and the Debtor in the sum of $12,566.35 for work performed on the project. This check was issued by Ames but before being mailed out, the Debtor filed its Chapter 11 petition on July 14, 1982. In light of this filing, and pursuant to an Order of this Court in Adversary No. 82–7400 directing that all monies received from Ames Construction, Inc. be deposited into Court, Ames reissued a new check on January 24, 1983, in the sum of $27,795.87 and deposited it with the Clerk of the Bankruptcy Court. Fisher asserts that it executed the lien waiver in exchange for $12,566.35 due and owing from Ames Construction, Inc. and that this sum at no time was or became property of the estate subject to the avoidance provisions of section 544 of the Code.

On December 7, 1982, the Debtor received a North Dakota corporate income tax and business corporation privilege tax refund in the sum of $20,403.54 which amount was ultimately deposited in the Clerk's registry account.

The IRS has filed a claim in the sum of $425,681.71 of which $384,234.39 represents September and December, 1981 FICA and withholding taxes and as such is claimed as secured. The IRS filed its liens in June of 1982.

The Bank has a secured claim in the sum of $530,659.87 with its security interest extending to all accounts, contract rights and proceeds thereof. A security agreement between the Debtor and the Bank was entered into on July 1, 1981. The Bank takes the position that the North Dakota tax refund is a proceed of the Debtor's accounts, and its claim thereto is senior in time to that of the IRS. In addition, it charges that Fisher has at best an unsecured claim in its share of the Ames Construction, Inc. deposit because by the lien waiver it released any and all lien or claim of lien, and therefore its claim may be avoided under section 544. This, says the Bank, leaves it with a superior claim to the entire $48,198.81 plus interest now on deposit.

Dakota is the trustee for the construction employee's pension plan to which the Debtor is indebted in the amount of $33,009.03. This claim, says Dakota, is a priority unsecured claim ahead of the IRS by virtue of section 724 (subordination) and section 502(f) (contribution to employee benefit plans). Because of this priority it claims that any distribution to the IRS must be subsequent to satisfaction of its unsecured claim. Dakota also takes the position that the Bank is entitled to no part of the Ames deposit because that deposit represents a contract payment made subsequent to the Chapter 11 filing and is therefore not subject to any lien existing prior to that date according to the terms of section 552 of the Code.

The Trustee has taken the position that payment to the IRS of the North Dakota tax refund proceeds at this time would constitute a preference.

1.

### THE AMES DEPOSIT

Section 552 of the Code provides that property acquired by the estate or the debtor after commencement of a case is not subject to any lien resulting from a security agreement entered into before commencement. However, if that security agreement created a security interest extending to property acquired before commencement and to the proceeds thereof, then the security interest will extend to such after-acquired proceeds to the extent provided by the agreement and as allowed by applicable non-bankruptcy law. The Bank's interest in the $27,795.87 Ames deposit stems from a July, 1981 security agreement extending to it a security interest in all personal property, all inventory, all documents of title, all accounts (defined as "rights to payment for goods sold or leased or for services rendered"), all contract rights ... and all proceeds and products of all of the foregoing. Although Ames made its payment after commencement of the case, the payment was in partial satisfaction of a contractual obligation

to the Debtor, and there is nothing to suggest that this amount is contested as between Ames and the Debtor although there may be some dispute as to the extent of the total balance. There is no dispute at all as to the fact that Fisher did perform work and supplied materials to the project in a satisfactory manner. The balance owing to Fisher as subcontractor was agreed upon between Ames, Fisher and the Debtor in March of 1982, some four months before the Debtor's filing. In reliance thereon, Fisher delivered to Ames a mechanic's lien release. The materials supplied and the work performed was not at the request of the Debtor, nor was the contract with the Debtor. Rather, Fisher was hired by Ames as a subcontractor to complete portions of a project that the Debtor had also been involved in. The $12,566.35 still owing by virtue of the March agreement was never money due or owing the Debtor and was not in payment of any work performed by it. It represents monies due Fisher from Ames for work performed and materials supplied by Fisher to Ames pursuant to its subcontract. Whether the $12,566.35 is too much is not an issue for the Debtor to raise but is only a matter between Ames and Fisher. Ames has received a mechanic's lien release—now Fisher ought to receive the benefit of its bargain. This money never became property of the Debtor, nor would Fisher's claim be against the estate. Thus, section 544 is inapplicable in this instance. The Bank's security interest in contract rights and proceeds thereof is sufficiently broad to cover the balance of the Ames deposit not attributable to Fisher's work. It is the opinion of the Court that from the $27,795.87 plus interest deposited by Ames, the sum of $12,566.35 plus interest should be paid over to Fisher with the balance of $15,229.52 plus interest paid over to the Bank.

## 2.
### NORTH DAKOTA TAX REFUND

■ The IRS claim arises by virtue of liens filed in June of 1982 for unpaid FICA and withholding taxes. The lien of the IRS for unpaid FICA and withholding taxes is not avoidable according to the provisions of section 547(c)(6) because it was perfected prior to the petition filing. It does, however, remain subject to the preference provisions of section 547 and in this context reference is made to section 724(b) of the Code. This section provides that even though not avoidable, such tax liens share in the property available for distribution according to certain enumerated priorities. A tax lien is subordinate to senior secured claims and to those claims enumerated in section 507(a)(1)–(5) of the Code, which places numerous categories of administrative and unsecured claims ahead of a tax lien including claims for allowed unsecured claims for contributions to employee benefit plans. (Subpart (a)(4)). Payment of the North Dakota tax refund to the IRS as proposed by the Debtor may well constitute a preference in view of the priorities listed in section 724(b) and section 507(a). This sum, therefore, may not be paid to the IRS.

The Bank claims to have perfected security interest in the North Dakota refund for the reason that the refund constitutes a proceed or product of the Debtor's accounts.

■ The definition of "account" as set out in the Bank's security agreement is taken directly from U.C.C. § 9–106 (N.D. C.C. § 41–09–06) which defines the term "account" and also defines the term "general intangible". The Bank's security agreement does not refer to general intangibles, and from that omission and from the fact that it specifically included U.C.C. § 9–106 language, the Court concludes that a security interest in general intangibles was not intended. The Code distinguishes between accounts and general intangibles, and case law has likewise noted a distinction. The term "general intangibles" has been interpreted as being broad enough to include tax refunds. *In re Metric Metals International, Inc.*, 20 B.R. 633 (D.C.S.D. N.Y.1981); *In re Kendrick & King Lumber, Inc.*, 14 B.R. 764 (Bankr.W.D.Okla. 1981). The term "accounts", as defined by the Code but more specifically as employed

by the Bank in its own document, is not sufficiently broad in its definition to include tax refunds. The refund no doubt had its origin as proceeds from work performed or materials supplied by the Debtor, but that character was lost when a tax payment was made to the State of North Dakota. The tax refund is not a right to payment for goods sold or leased or for services rendered. An account is a right to payment earned by performance. In the instant situation, the monies in issue may originally have stemmed from a right earned by performance, but that right once the funds were transmitted to the State of North Dakota, crystalized not into an account but rather into a general intangible insofar as the debtor became entitled to a tax refund.

The Bank's security interest must be confined to the express terms of its agreement. Being experienced in matters of taking security, it must be presumed to have appreciated the distinction between accounts and general intangibles at the time it drafted the agreement. Furthermore, as the drafting party, the document must be construed most strictly against it. Therefore, it is the opinion of the Court that the Bank is not entitled to any portion of the income tax refund now on deposit with the Clerk. The remaining balance of this refund totalling $16,690.36 plus interest shall be returned to the Debtor and held by it in its Debtor-In-Possession account and made subject to the costs of administration and various priority claims that may ultimately arise in these proceedings, including that of the IRS.

IT IS SO ORDERED.