In re Adam C. **KOPPINGER** and Martha M. Koppinger, d/b/a Koppinger Oil Company, Debtor.

Bankruptcy No. 89–05740.

United States Bankruptcy Court, D. North Dakota.

March 20, 1990.

U.S. Trustee (Minneapolis, MN).

James Coles, Bismarck, N.D., for debtors.

LaRoy Baird, Bismarck, N.D., for American State Bank.

Carla Smith, Bismarck, N.D., for N.D. State Tax Dept.

## MEMORANDUM AND ORDER

WILLIAM A. HILL, Bankruptcy Judge.

The matter before the court is a Motion for Authorization of Post–Petition Transfer, filed on December 26, 1989, by American State Bank and Trust of Dickinson, North Dakota. Through their motion, American State Bank and Trust seeks a turnover of all of the Debtors' accounts receivable existing as of September 28, 1989, presently collected and being held by the Debtors or by American State Bank and Trust or to be collected during the pendency of this bankruptcy. The Debtors, Adam and Martha Koppinger d/b/a Koppinger Oil Company, resists the bank's motion insofar as the money in the accounts receivable represent a sum due and payable the State of North Dakota from the sale of motor fuels. It is American State Bank and Trust's position that the entire accounts receivable is subject to the bank's security interest. American State Bank and Trust and the Debtors have filed a stipulation as to certain facts which will facilitate the determination of this issue before the court. The facts as relevant to

the determination of this motion are as follows:

### 1.

The Debtors, Adam and Martha Koppinger d/b/a Koppinger Oil Company (Koppinger), operate a bulk oil plant outside of Dickinson, North Dakota. The Debtors entered into a loan agreement with American State Bank and Trust Company (ASB). In return for the loan the Koppingers granted ASB *inter alia,* a security interest in, "All Accounts (rights to repayment for goods sold or leased or for services rendered) of debtor now existing or hereafter at any time acquired." *See* Exhibit B (security agreement dated December 7, 1987). It is stipulated that ASB holds a validly perfected security interest in the Debtors' accounts receivable. The Koppingers filed for relief under Chapter 11 of the Bankruptcy Code on September 28, 1989. ASB asserts that the accounts receivable in its entirety is subject to the bank's validly perfected security interest. The Debtors contend that the bank's security interest only attaches to the proceeds of the fuel sales and not the amounts attributable to the North Dakota motor fuel tax due and payable to the State of North Dakota. The parties orally stipulated at a hearing dated February 12, 1990, that the Debtors qualify as a licensed North Dakota motor fuels dealer pursuant to North Dakota Century Code ch. 57–43.1. The court has also been favored with a brief in the nature of an amicus curiae from the North Dakota Office of the Tax Commissioner. It is the Tax Commissioner's position that the Debtors qualify not only as a North Dakota motor fuels dealer pursuant to ch. 57–43.1 but also as a special motor fuels dealer

pursuant to ch. 57–43.2. *See* N.D.Cent. Code chs. 57–43.1 and 57–43.2. Because the parties have limited their briefs and stipulation to the fact that the Debtors are a licensed motor fuels dealer pursuant to ch. 57–43.1 of the North Dakota Century Code, this court will limit itself in this Order to dealing with the alleged tax proceeds pursuant to ch. 57–43.1. However, the following Order is applicable to any tax collected pursuant to chs. 57–43.1 or 57–43.2 of the North Dakota Century Code.

### 2.

The State of North Dakota imposes a tax on all motor fuels sold in this state. *See* N.D.Cent.Code ch. 57–43.1. The tax is imposed on the user/consumer on all sales but is to be collected by the licensed fuel dealer. N.D.Cent.Code § 57–43.1–02(4) (Supp.1989).[1] The tax on the motor fuel attaches at time of sale. *Id.* The motor fuel dealer is required to charge and collect the tax as part of the selling price of the fuel. N.D.Cent.Code § 57–43.1–20 (1983).[2] It is the duty of the dealer to then remit the tax proceeds to the State of North Dakota. N.D.Cent.Code § 57–43.1–23 (1983).[3] The dealer is allowed to deduct a percentage of the tax due to cover the cost of collecting the tax and transmitting it to the tax commissioner. N.D.Cent.Code § 57–43.1–24 (1983).[4]

### 3.

The stipulation signed and dated February 12, 1990, sets out the customers and amounts either paid or due and owing the Koppingers. The accounts which are paid and being held by a ASB are:

| | |
|---|---|
| Agnes Boehm | $ 25.48 |
| Finian Brinster | $ 944.22 |
| City of Dickinson , | $ 3,683.86 |

1. N.D.Cent.Code § 57–43.1–02(4). The dealer shall collect the tax imposed by this section from the consumer on all sales.

2. N.D.Cent.Code § 57–43.1–20. **Tax chargeable to consumer.** Every dealer required to collect the motor vehicle fuel tax imposed by this chapter shall charge and collect the tax on all motor vehicle fuel sold by that dealer, except as provided in section 57–43.1–18, as a part of the selling price of the fuel.

3. N.D.Cent.Code § 57–43.1–23. **Payment of tax.** The tax collected upon motor vehicle fuel

in any calendar month must be remitted by the dealer when the statement required in section 57–43.1–16 is rendered only on that fuel sold or used during that calendar month. The commissioner shall pay over all of the money thus received to the state treasurer.

4. N.D.Cent.Code § 57–43.1–24. **Deduction of cost of collecting.** On making payments to the commissioner as provided in this chapter, the dealer shall deduct two percent from the amount of tax due to cover the cost of collecting the tax and transmitting it to the commissioner.

| | |
|---|---|
| James Clarys | $ 1,801.92 |
| Vick Cymbaluk | $ 53.55 |
| Electric Sales and Service | $ 240.00 |
| Ralph Froehlich | $ 707.40 |
| Clifford Griggs | $ 126.00 |
| Alfred Kubishta | $ 800.00 |
| Joe Hutmacher | $ 1,973.73 |
| Gary Jilek | $ 395.85 |
| Kadrmas Tire | $ 343.00 |
| Alan J. Kadrmas | $ 334.80 |
| Mark Kordon | $ 630.49 |
| Roger Malkowski | $ 3,377.36 |
| Phillip Malkowski | $ 2,583.26 |
| Don Meduna | $ 940.71 |
| Toby Miller | $ 741.11 |
| Parkway Ford | $ 1,432.06 |
| Queen City Beverage | $ 338.25 |
| Pete Raab | $ 1,129.33 |
| John J. Schmidt | $ 3,439.14 |
| Stark Ready Mix | $ 27.14 |
| Charles Svihl | $ 105.37 |
| Thurman Wolf | $ 2,232.28 |
| Norbert Zastoupil | $ 460.97 |

The accounts which were in existence at the time of filing yet remain unpaid are:

| | |
|---|---|
| Kevin Arnold | $ 114.34 |
| Dennis Binstock | $ 58.28 |
| Leo Boehm | $ 128.75 |
| Burlington Northern | $ 69.48 |
| Rick Burwick | $ 902.08 |
| Clays | $ 596.58 |
| Mike Dolejak | $ 1,860.61 |
| John Dvorak | $ 409.16 |
| Earle R. Foster | $ 729.62 |
| Ray Forehlich | $ 125.06 |
| Conrad Garahofer | $ 180.25 |
| Gerald Goodsell | $ 371.07 |
| Ron Halstead | $ 2,033.92 |
| Alfred Kubishta | $ 167.97 |
| Hutton Contracting | $ 32.28 |
| J.R. Diesel Service | $ 49.71 |
| Ray Karsky | $ 388.22 |
| Koppinger Discount | $ 48,592.33 |
| Joe Kralicek | $ 539.60 |
| L & H Excavation | $ 462.93 |
| Tony LaRoque | $ 95.88 |
| Lees Hauling | $ 4,331.02 |
| John J. Leiss | $ 23.39 |
| Wilbert Mayer | $ 155.94 |
| Mike J. Miller | $ 2,665.36 |
| Olson Trucking | $ 232.27 |
| Johnny C. Petersen | $ 181.67 |
| James Peterson | $ 294.37 |
| Prairie Oil | $ 47,832.86 |
| Jim Schummer | $ 91.97 |
| Schwartz Ed Construction | $ 21.20 |
| Stark Ready Mix | $ 27.14 |
| Tri Western | $ 1,834.23 |
| USPFO for ND | $ 64.63 |
| Marv Wanner | $ 625.68 |
| Myrl Williamson | $ 1,726.83 |
| Kevin Wilson | $ 255.48 |

There is a dispute, by way of the briefs submitted by the parties, as to whether the above charge customers had included in their accounts amounts attributable to motor fuel taxes. *See* ASB's Brief in Support of Motion on Post–Petition Transfer, page 5. N.D.Cent.Code § 57–43.1–20 requires that the motor fuel dealer collect the tax as part of the selling price of the fuel. Therefore, this court will presume that the Debtors complied with North Dakota Century Code § 57–43.1–20 in collecting the tax as part of the purchase price. The bank has produced no countervailing evidence and therefore the presumption that the Debtors complied with the law will stand.

It is not disputed by either party that ASB has a validly perfected security interest in the Debtors' "accounts" by virtue of the security agreement attached as Exhibit B to the subject stipulation and dated December 7, 1977. However, the extent of ASB's security interest is limited by the definition of "all accounts" contained in the subject security agreement. The security agreement titled "Inventory, Accounts, and Contract Rights", defines accounts as "(rights to payments for goods sold or leased or for services rendered.)". This definition is very similar to North Dakota Century Code § 41–09–06 (U.C.C. § 9–106) and as defined by this court in *In re Scherbenske Excavating, Inc.*, 38 B.R. 84, 87 (Bankr.D.N.D.1984). *See* N.D.Cent.Code § 41–09–06 (U.C.C. § 9–106).

While the fuel tax was a part of the purchase price, it was nonetheless a payment for the benefit of the state and merely attached to the purchase price of the motor fuel. The Debtors were acting as a collecting agent for the state. The fuel tax *does not arise as a right to payment for goods or services rendered* nor was it earned by the Debtors through performance. The collection of the motor fuel tax solely arises as a statutory duty imposed on a dealer of motor fuels. *See* N.D.Cent. Code ch. 57–43.1. In addition, the taxes collected by the Debtors were made for the benefit of the State of North Dakota and did not add to the Koppingers' general revenues. Therefore, the term "accounts" as defined by the parties in their security agreement dated December 7, 1977, is not sufficiently broad enough in its definition to include the portion of monies which rep-

resent the motor fuels tax. *See generally Matter of Transport Clearings–Midwest Inc.*, 26 B.R. 282, 289 (Bankr.W.D.Mo.1982) ("special assessments" made against member carriers for certain litigation costs did not add to the debtor's general revenues and were not payments for goods or services and could not be regarded as "accounts"); *Citizens Savings Bank v. Sac City State Bank,* 315 N.W.2d 20, 30 (Iowa 1982) (dealer holdbacks could not be classified as account because debtor had not sold or leased anything).

Therefore, it is the opinion of the court that the security agreement is not sufficiently broad enough to encompass the amounts which represent the fuel taxes due and owing to the State of North Dakota for the sale of motor fuel on the correlating accounts.

Accordingly, American State Bank and Trust's motion for authorization of post-petition transfer is GRANTED. However, the above-listed accounts of the Debtors should be reduced by the representative motor fuels tax for each subject account. Since the parties are in agreement this court will further order that the sums which represent the motor fuels tax should be paid directly to Tax Commissioner for the benefit of the State of North Dakota.

IT IS SO ORDERED.