**PRODUCTION CREDIT ASSOCIATION, Appellee,**

v.

**HEDGES et al.; Ewing, Appellant; Citizens Bank of Ashville, Appellee.**

[Cite as *Prod. Credit Assn. v. Hedges* (1993), 87 Ohio App.3d 207.]

No. 92 CA 09.

Court of Appeals of Ohio,
Pickaway County.

Decided April 15, 1993.

*John E. Bowers,* for appellee Production Credit Association.

*Charles W. Ewing Co., L.P.A.,* and *Charles W. Ewing,* for appellant Charles W. Ewing.

*Margulis, Gussler, Hall, Hosterman & Lucks* and *John W. Hosterman,* for appellee Citizens Bank of Ashville.

S<small>TEPHENSON</small>, Judge.

This is an appeal from a judgment entered by the Court of Common Pleas of Pickaway County determining priority of claims among certain creditors of David H. Hedges and Joyce Hedges ("the debtors"), defendants below. Charles W. Ewing, appellant herein and counsel for the debtors below, assigns the following error for our review:

"The lower court erred when it determined that a pre-bankruptcy secured interest in crops attached to the receipts for the sale of crops created entirely within a pending Chapter 12 bankruptcy upon the dismissal of the bankruptcy."

A short summary of the facts pertinent to this appeal is as follows. Production Credit Association ("PCA"), plaintiff below and appellee herein, commenced the cause *sub judice* on July 11, 1986, seeking judgment against the debtors as well as the foreclosure of several mortgages and security interests. On August 6, 1986, the Citizens Bank of Ashville, defendant below and appellee herein, was joined as a party defendant in order to assert its own interest in the property sought to be foreclosed. Subsequently, the bank set forth its interest and then sought its own judgment against the debtors for default on promissory notes and the foreclosure of security interests in various property.

On March 23, 1987, the debtors filed for bankruptcy, which stayed all proceedings in the action below. See Section 362, Title 11, U.S.Code.[1] During the bankruptcy proceedings, the debtors proposed a number of (Chapter 12) reorganization plans which were never confirmed. On April 28, 1989, the United States Bankruptcy Court dismissed the case after the debtors failed to obtain confirmation on their fifth amended plan of reorganization. In so doing, the court noted that it had "serious concerns that these debtors did not pursue their case in good faith."

During the summer of 1989, PCA and the bank both sought, and were awarded, judgments on their respective claims. Proceedings in execution of those judgments were then commenced. On October 3, 1989, the debtors and PCA agreed to a judgment entry concerning disposition of several assets. The following portions of the agreement are pertinent to this appeal:

"9. That a check issued by International Multifoods, representing the 1988 grain proceeds in the amount of Thirty Thousand Two Hundred Sixty-nine Dollars and Eighty-four Cents ($30,269.84), made payable to the order of David H. Hedges, Production Credit, FHA, and the Citizens Bank shall be deposited into an interest bearing account at the Citizens Bank of Ashville until the Court can determine the interests of the parties therein;

"10. That the deposit of the above mentioned International Multifoods check shall not be deemed to waive any rights to said check claimed by Charles Ewing for attorney fees (whether a lien or in payment thereof), the Citizens Bank (either by virtue of a crop lien or a garnishment interest as provided hereafter), or plaintiff (by virtue of a crop lien)[.]"

The grain proceeds were, thereafter, deposited with the bank. Although the debtors initiated a new (Chapter 7) bankruptcy proceeding in 1990, the trustee later abandoned claim to these proceeds as part of the bankruptcy estate. On June 27, 1991, PCA filed a motion for an order of disbursement to have these proceeds applied to its claims against the debtors. PCA argued, *inter alia*, that its claims to these funds were superior to those of the other creditors. The bank filed its own memorandum arguing that it too had an interest in the grain proceeds and that its interest might be superior to that of PCA as a result of certain alleged defects in PCA's financing statements. Appellant filed his own claim to the proceeds, arguing that he had an equitable lien on these funds for payment of services "as a facilitator of the Chapter 11 bankruptcy." Appellant further argued that the security interests of PCA and the bank would not have

---

1. The record indicates that appellant represented the debtors before the bankruptcy court. However, the debtors were initially represented by different counsel below. Appellant was substituted as their new counsel in these proceedings on February 25, 1988.

attached to crops planted after the filing of a bankruptcy action and then harvested and sold before its dismissal.

On October 16, 1991, PCA and the bank filed an agreed stipulation whereby they reserved, for future agreement, the issue of lien priority between their two institutions. Accordingly, the matter proceeded for further consideration solely on the issue of appellant's lien priority with respect to both appellees. On February 7, 1992, the lower court issued its decision, ruling that the claims of the two financial institutions were superior to those of appellant for attorney fees. This appeal followed.[2]

We begin our analysis by defining the scope of the issue presented for our review. There is no question that all three parties have valid claims against the crop proceeds. The judgment of the lower court assumes as much and that assumption has not been challenged on appeal. There is also no question that the claims of both appellees arise from perfected security interests which predate the 1987 bankruptcy. The instruments of record also reveal that crops, and future crops, were specified as collateral therein. Thus, under Ohio law, appellees clearly held an interest superior to that of appellant in the debtors' future crops or proceeds therefrom. See R.C. 1309.25(B) (security interests continue in identifiable proceeds).

The real issue in the cause *sub judice* is whether that priority was altered by the 1987 bankruptcy. To that end, we note the following provision of Section 552(a), Title 11, U.S.Code:

---

**2.** Appellant improperly filed his notice of appeal to the lower court's pronouncement of February 7, 1992, as that document was expressly labeled as an "opinion" and called for appellee to "prepare a *journal entry* consistent with the * * * ruling of the [c]ourt." (Emphasis added.) This was not a final order. See *Millies v. Millies* (1976), 47 Ohio St.2d 43, 45, 1° O.O.3d 26, 27, 350 N.E.2d 675, 677. Moreover, there was no resolution of the competing claims by PCA and the bank and therefore the order failed the test of finality under Civ.R. 54(B). Judgment was eventually entered pursuant to the trial court's opinion on April 13, 1992, and an agreed judgment entry resolving lien priority between PCA and the bank was filed on July 31, 1992. Appellant neglected to file any subsequent notice of appeal in this case. Ohio law permits us to review only the *final orders* of inferior courts within our district. Section 3(B)(2), Article IV of the Ohio Constitution; R.C. 2501.02. If an order lacks finality, then we have no jurisdiction to review the matter and it must be dismissed. *In re Christian* (July 22, 1992), Athens App. No. 1507, unreported at 5, 1992 WL 174718. The absence of a timely filed notice of appeal from a *final order* would have, ordinarily, required the dismissal of this case. However, the provisions of App.R. 4(C) provide that a premature notice of appeal will be treated as filed immediately after the actual final judgment entry. As a result of the unique interplay between this rule and the various procedural errors made herein, we held that the judgment appealed from was a final order and, on December 10, 1992, overruled a motion to dismiss.

" * * * [Generally], property acquired by the estate or by the debtor after the commencement of the case is not subject to any lien resulting from any security agreement entered into by the debtor before the commencement of the case."

Under this provision, so-called after-acquired property (*i.e.,* property acquired by the estate or the debtor after commencement of bankruptcy proceedings) is not subject to any lien resulting from a security agreement entered into before proceedings were commenced. See *In re Scherbenske Excavating, Inc.* (D.N.D.1984), 38 B.R. 84, 86. It is well settled that farm crops planted after a bankruptcy petition is filed will be considered after-acquired property subject to Section 552(a). See, generally, *In re Olsen* (D.Col.1988), 87 B.R. 148, 153; *In re Drewes* (N.D.Iowa 1986), 68 B.R. 153, 154; *In re Randall* (C.D.Ill.1986), 58 B.R. 289, 290. The proceeds at issue in the cause *sub judice* were derived from the harvest of crops in 1988 which, presumably, were planted after the bankruptcy was commenced in early 1987. Thus, applying those principles outlined above, the crops would have been after-acquired property and would not have been subject to any liens arising from prebankruptcy security agreements. If no lien or priority claim would attach to the crops themselves, then it follows that no such interest would attach to the proceeds therefrom.

However, the bankruptcy commenced by the debtors below was dismissed and never completed. The following provisions of Section 349(b), Title 11, U.S.Code discuss the effects of such a dismissal:

"Unless the court, for cause, orders otherwise, a dismissal of a case other than under section 742 of this title

"(1) reinstates—

"(A) Any proceeding or custodianship superseded under section 543 of this title;

"(B) Any transfer avoided under section 522, 544, 545, 547, 548, 549, or 724(a) of this title, or preserved under section 510(c)(2), 522(i)(2), or 551 of this title; and

"(C) Any lien voided under section 506(d) of this title;

"(2) vacates any order, judgment, or transfer ordered, under section 522(i)(1), 542, 550, or 553 of this title; and

"(3) revests the property of the estate in the entity in which such property was vested immediately before the commencement of the case under this title."

The basic purpose of these provisions is to undo the bankruptcy case as far as practicable and to restore all property rights to the position in which they were found at the commencement of the case. See Senate (Judiciary Committee) Rep. No. 95–989, 95th Cong., 2d Sess., reprinted in 1978 U.S.Code Cong. & Ad.News 5787, 5834–5835. This would seem to indicate that, upon dismissal of the

bankruptcy, a lien based on a prepetition security agreement may vest in after-acquired property, or proceeds therefrom, notwithstanding the aforementioned provisions of Section 552(a). Not surprisingly, appellees argue that this is the case, whereas appellant takes the contrary position.

There is little in the way of interpretive guidance as to the interplay between these two provisions of the bankruptcy code. Appellees cite *In re Kucera* (D.Neb.1990), 123 B.R. 852, wherein the United States Bankruptcy Court considered this very issue and held that Section 552(a) merely suspended operation of an after-acquired-property clause during the pendency of a bankruptcy case. *Id.* at 854. The court reasoned that if a case is dismissed before confirmation of a plan, the rights of prebankruptcy secured creditors in property acquired during the pendency of the case should be determined as if the bankruptcy case had never been filed. *Id.* Thus, the court ruled, a prebankruptcy secured creditor held a duly perfected lien in proceeds from a corn crop planted, harvested and sold after commencement of the case. *Id.* at 855. The court further found that this result was supported by the following considerations:

" * * * First, once the bankruptcy case is dismissed the *rights of creditors and debtors should be determined by state law.* In this context, there is no identifiable federal interest in voiding an after acquired property clause that is specifically validated by state law. See U.C.C. § 9–204 Further, state law comprehensively deals with the enforceability and priority of security interests and, therefore, should be controlling.

"Second, as a matter of federal law, § 552 is part of a carefully balanced scheme in which a secured creditor is deprived of its interest in after acquired property, but is assured that its interest in collateral will be adequately protected both before and after confirmation of a plan. * * * [Citations omitted.] It would be *inequitable and perhaps unconstitutional to deprive the secured creditor of its interest in after acquired property without providing adequate protection.* * * * If § 552 were given effect after dismissal, debtors would be benefited by receiving property free and clear of liens. This is contrary to state law; *it deprives the secured creditor of an interest enforceable under state law, and it would provide debtor an incentive to file and dismiss bankruptcy cases in order to invalidate after acquired property clauses.*

"Third, the fact that § 349 does not specifically refer to § 552 is not as much of a problem as some courts have concluded. Section 349 does not need to refer to § 552 because § 349 specifically provides that property of the estate vests in the debtor upon dismissal. After dismissal, [Section] 552 ceases to apply. Upon dismissal, debtor obtains rights in the property of the estate and, under state law, security interests under Article 9 of the Uniform Commercial Code may attach to the debtor's interest. *So construed, § 552 simply suspends operation of an after*

*acquired property clause (see* U.C.C. § 9–204) *during the pendency of the case. It does not preclude post-dismissal attachment of a pre-bankruptcy petition security interest."* (Emphasis added.) *Id.* at 854–855.

We find this reasoning to be highly persuasive. The debtors in this case failed to obtain confirmation on any of their proposed reorganization plans. The bankruptcy was, consequently, dismissed and there was no longer any reason for federal law to control. Rather, state law would then determine the rights and duties of debtors and creditors *inter se.* It should also be remembered that the legislative objective for enacting Section 349 was to undo the bankruptcy case and restore the parties to their original positions. See Senate Rep. No. 95–989, *supra,* at 5834–5835. In that appellees' security interests would have attached to the 1988 crops and then to the proceeds resulting therefrom, our ruling herein merely restores the parties to the original positions in which they would have been if the 1987 bankruptcy had never been filed. This is consistent with the aforementioned congressional purpose for enacting the provisions.

Appellant counterargues by citing several cases which are discussed in the *Kucera* decision where other courts have held that prebankruptcy security interests do not attach to property acquired during the pendency of a bankruptcy action even after the case is dismissed. See, e.g., *In re Depew* (N.D.Ind.1989), 115 B.R. 965; *In re Newton* (C.D.Ill.1986), 64 B.R. 790. However, a review of those cases reveals significant factual distinctions which render them inapposite to either *Kucera* or the cause *sub judice.*

In the *Depew* case, the debtors' plan had already been confirmed, thereby discharging all prebankruptcy obligations and replacing them with those in the plan. The court noted in its decision that confirmation of the plan had been the "penultimate event" in that proceeding. *Depew, supra,* 115 B.R. at 969. In that confirmation of the debtors' reorganization plan allowed for their discharge from indebtedness, see Section 1141(d)(1)(A), Title 11, U.S.Code, the court found an "inseparable" link between confirmation and discharge and concluded that the provisions of Section 349(b) were not intended to vitiate a discharge from indebtedness or vacate a confirmed plan. *Depew, supra,* at 970. This clearly has no bearing on the case before us now, where the debtors failed to obtain confirmation on any of their five proposed reorganization plans.

The *Newton* case is also distinguishable because it involved the sale of farm crops, planted after commencement of bankruptcy, to a third party. The court noted that the purchaser therein had no notice of any encumbrance on the crops, as none would have attached under Section 552, and that as a matter of policy the purchaser should not be forced to bear the risk that the reorganization might fail and that the case could be dismissed. *Newton, supra,* 64 B.R. at 793–794. The court in *Kucera, supra,* 123 B.R. at 854, acknowledged that the result in the

*Newton* case was probably the most equitable. We agree. It should also be noted that the legislative history of Section 349 discusses the effect of dismissal and then adds that "[t]his does not necessarily encompass undoing sales of property from the estate to a good faith purchaser." See Senate Rep. No. 95–989, *supra,* at 5834–5835. This would tend to indicate that the reasoning in *Newton* should be restricted to the context of third party sales.

In sum, we adopt the reasoning of the court in *Kucera, supra.* The debtors' bankruptcy case was dismissed without any confirmation of a reorganization plan or discharge of indebtedness. There is no longer any reason for federal law to apply and the parties should be placed in the same position they would be in if the bankruptcy petition had never been filed. State law will, therefore, control. Appellant cites nothing under Ohio law which would prevent the security interests from attaching to the crops and we are not aware of any. Consequently, the assignment of error is overruled and the judgment of the trial court is affirmed.

*Judgment affirmed.*

PETER B. ABELE and GREY, JJ., concur.