DECISION AND JUDGMENT ENTRY
This is a consolidated appeal from two Scioto County Common Pleas Court summary judgments in favor of New Plan Excel Realty Trust, Inc. (New Plan), defendant below and cross appellant herein, and against Mark-It Place Foods, Inc., d/b/a Festival Foods (Festival Foods), plaintiff below and appellant herein, and Fleming Companies, Inc. (Fleming Cos.), defendant below and cross appellant herein.
The following errors are assigned by Festival Foods for our review:
FIRST ASSIGNMENT OF ERROR:
 "THE TRIAL COURT ERRED IN FAILING TO GRANT SUMMARY JUDGMENT IN FAVOR OF MARK-I [sic] PLACE FOODS, INC., DBA FESTIVAL FOODS, ON ITS COMPLAINT AGAINST NEW PLAN EXCEL REALTY TRUST, INC."
SECOND ASSIGNMENT OF ERROR:
 "THE TRIAL COURT ERRED IN GRANTING SUMMARY JUDGMENT TO NEW PLAN EXCEL REALTY TRUST, INC., AGAINST MARK-IT PLACE FOODS, INC., DBA FESTIVAL FOODS."
THIRD ASSIGNMENT OF ERROR:
 "THE TRIAL COURT ERRED IN FAILING TO CONSTRUE THE FACTS MOST FAVORABLY TO MARK-IT PLACE FOODS, INC., DBA FESTIVAL FOODS, WHEN RULING ON THE MOTION FOR SUMMARY JUDGMENT BY NEW PLAN EXCEL REALTY TRUST, INC."
FOURTH ASSIGNMENT OF ERROR:
 "THE TRIAL COURT ERRED IN HOLDING THAT PRIVITY OF CONTRACT PREVENT MARK-IT PLACE FOODS, INC., DBA FESTIVAL FOODS, FROM MAINTAINING AN ACTION DIRECTLY AGAINST NEW PLAN EXCEL REALTY TRUST, INC., FOR BREACH OF CONTRACT."
FIFTH ASSIGNMENT OF ERROR:
 "THE TRIAL COURT ERRED IN HOLDING THAT MARK-IT PLACE FOODS, INC., DBA FESTIVAL FOODS, COULD NOT MAINTAIN AN ACTION DIRECTLY AGAINST NEW PLAN EXCEL REALTY TRUST, INC., AS THIRD-PARTY OF THE LEASE."
SIXTH ASSIGNMENT OF ERROR:
 "THE TRIAL COURT ERRED IN HOLDING THAT THE ESTOPPEL LETTERS CAN BE CONSIDERED AS EVIDENCE OF REASONABLE RELIANCE BY NEW PLAN EXCEL REALTY TRUST, INC."
SEVENTH ASSIGNMENT OF ERROR:
 "THE TRIAL COURT ERRED WHEN IT FAILED TO HOLD, AS A MATTER OF LAW, THAT THE LEASE WAS CLEAR AND UNAMBIGUOUS ON ITS FACE, THAT MARK-IT PLACE FOODS, INC., DBA FESTIVAL FOODS, AND FLEMING COMPANIES, INC. HAD THE EXCLUSIVE RIGHT TO SELL FOODSTUFFS AND THAT A SALE OF FOODSTUFFS BY WAL-MART VIOLATED THE LEASE."
EIGHTH ASSIGNMENT OF ERROR:
 "THE TRIAL COURT ERRED WHEN IT CONSIDERED PAROL EVIDENCE TO CHANGE A CONTRACT CLEAR AND UNAMBIGUOUS ON ITS FACE."
NINTH ASSIGNMENT OF ERROR:
 "THE TRIAL COURT ERRED IN HOLDING THAT MARK-IT PLACE FOODS, INC., DBA FESTIVAL FOODS, AND FLEMING COMPANIES, INC., COULD NOT RECOVER FROM NEW PLAN EXCEL REALTY TRUST, INC., RENTS PAID UNDER PROTEST."
TENTH ASSIGNMENT OF ERROR:
 "THE TRIAL COURT ERRED IN HOLDING THAT R.C. 1331 HAD APPLICATION TO THE LEASE."
ELEVENTH ASSIGNMENT OF ERROR:
 "THE TRIAL COURT ERRED IN FINDING SECTION 6.3 OF THE LEASE TO BE `OVERBROAD'."
New Plan posits the following cross assignments of error for review:
FIRST CROSS ASSIGNMENT OF ERROR:
 "THE TRIAL COURT ERRED IN HOLDING THAT AN ISSUE OF FACT EXISTED AS TO NEW PLAN EXCEL REALTY TRUST, INC.'S ("NEW PLAN") REASONABLE RELIANCE ON THE VALID ESTOPPEL LETTER SIGNED BY FLEMING COMPANIES, INC. ("FLEMING") AND MARK-IT PLACE FOODS, INC. ("MARK-IT"), AND THAT NEW PLAN WAS NOT ENTITLED TO JUDGMENT AS A MATTER OF LAW BASED ON ITS ESTOPPEL THEORIES."
SECOND CROSS ASSIGNMENT OF ERROR:
 "THE TRIAL COURT ERRED IN FAILING TO HOLD THAT UNDER THE INTERPRETATION OF SECTION 6.3 OF THE LEASE URGED BY FLEMING AND MARK-IT, THE RENT ABATEMENT WOULD CONSTITUTE AN UNENFORCEABLE PENALTY."
Finally, Fleming Cos. advances its own cross assignments of error as follows:
FIRST CROSS ASSIGNMENT OF ERROR:
 "THE TRIAL COURT ERRED IN GRANTING SUMMARY JUDGMENT TO NEW PLAN EXCEL REALTY TRUST, INC. ON FLEMING COMPANIES, INC.'S CROSS-CLAIM AGAINST NEW PLAN."
SECOND CROSS ASSIGNMENT OF ERROR:
 "THE TRIAL COURT ERRED IN DENYING THE MOTION FOR SUMMARY JUDGMENT OF FLEMING COMPANIES, INC. ON ITS CROSS-CLAIM AGAINST NEW PLAN."
THIRD CROSS ASSIGNMENT OF ERROR:
 "THE TRIAL COURT ERRED IN GRANTING SUMMARY JUDGMENT TO NEW PLAN ON ITS CROSS-CLAIM AGAINST FLEMING."
In the late 1980s, Wal-Mart Stores, Inc. (Wal-Mart) began to explore the possibility of opening a store in the Scioto County area. Wal-Mart retained the services of the Leo Eisenberg Co., a nationwide developer and shopping center manager, to examine the area. Eisenberg found an appropriate location in New Boston. Eisenberg then formed the New Boston Development Company (NBDC) to build and to later own the shopping center intended to house the new Wal-Mart store. NBDC sought other tenants for the shopping center as well and, on July 27, 1989, entered into a "shopping center lease" (the lease) whereby it agreed to let 52,628 square feet to Scrivner, Inc. (Scrivner), for use as a supermarket. That lease contained the following provision:
"Neither Lessor nor any affiliate or related party shall, without Lessee's prior written consent, own, operate or grant any lease or permit any assignment or sublease for a store (or any portion of a store) in the Shopping Center or any of Lessor's real estate located within 1,500 yards of the Shopping Center which permits a tenant under such lease to sell oroffer for sale groceries, meats, poultry, seafood, diary products,fruits, vegetables or baked goods, provided these restrictions shall not be deemed to prohibit a restaurant serving prepared food." (Emphasis added.)
In November of that year, NBDC leased a 112,238 square foot building and garden center in the shopping center to Wal-Mart. No provision was included in the lease to prohibit Wal-Mart from selling any of the items listed in the above cited portion of Scrivner's lease[1] and it is undisputed that, "from its opening day," Wal-Mart sold foodstuffs such as "chips, nuts, beverages, cereal, cookies, canned meats, pasta and other convenience food items."
On June 14, 1990, Scrivner assigned its leasehold interest to S.M. Flickinger, Co. (Flickinger) which, on January 9, 1991, entered into a "sublease agreement" subletting the premises to Festival Foods. Fleming Cos. is the successor in interest to Flickinger.
In 1992, NBDC decided to sell the shopping center. New Plan expressed interest in acquiring the property and examined the shopping center leases. New Plan found both the exclusive use covenant in the lease to Scrivner (the property occupied by Festival Foods under the sublease) and the absence of a reciprocal restrictive use covenant in Wal-Mart's lease. New Plan then sent an "estoppel letter" to NBDC and to the Fleming Cos. and asked for, among other things, assurances that there were "no defaults under the terms of the [l]ease." NBDC and Scrivner executed the letter and signified their assent to that representation. Festival Foods, likewise, consented to "the execution and delivery of [the] Estoppel Letter."[2] On the basis of those assurances, New Plan acquired the shopping center in the early part of 1993.
In December of 1998, Fleming Cos. sent a letter to New Plan to notify the company that Wal-Mart was selling foodstuffs at its New Boston store in violation of the aforementioned exclusive use clause in its assigned lease. Fleming Cos. asked that New Plan promptly take whatever action was necessary to "ensure that Wal-Mart immediately discontinue the sale of groceries, meats, poultry, seafood, dairy products, fruits, vegetables or baked goods to the public." No action was taken and Fleming Cos. discontinued rental payments under the lease.[3]
Festival Foods commenced the action below on November 17, 1999 and alleged that New Plan and Fleming Cos. violated the terms of the lease by not prohibiting Wal-Mart from selling foodstuffs in the shopping center. The sub-lessee asked for damages as well as a declaratory judgment to construe its rights and obligations under the lease. Fleming Cos. denied liability to its sub-lessee and filed a cross-claim against New Plan and alleged that the lessor breached the lease by not prohibiting Wal-Mart from selling foodstuffs. Like Festival Foods, Fleming Cos. asked for damages and a declaration of its rights and obligations under the lease. New Plan denied liability on the complaint and the cross-claim. The lessor also filed a cross-claim and counterclaim against its sub-lessor and sub-lessee and alleged that they were in default of the lease for failure to pay rent. New Plan asked for, inter alia, all rental payments due under the lease as well as possession of the demised premises.
The matter then proceeded through discovery process. On February 23, 2001, all three parties filed motions for summary judgment on their respective claims.
On March 9, 2001, the trial court issued a decision and judgment and addressed many of the different issues in the competing claims, counterclaim and cross-claims. Of primary importance, the trial court concluded that no breach of the exclusive use provision of the lease occurred by allowing Wal-Mart to sell particular food items. In reaching that conclusion, the court found that the provision was "overbroad" and should be construed only "to prohibit other supermarkets in the New Boston Shopping Center and any other store primarily engaged in the sale of foodstuffs." In view of the fact that Wal-Mart was not a supermarket, and was not primarily engaged in the sale of foodstuffs, the court concluded that New Plan did not violate its lease with Fleming Cos. Thereupon, the court granted summary judgment in favor of New Plan on both the complaint and cross-claim. The trial court also found that this rendered moot Festival Foods' claim against Fleming Cos.[4]
That same day, the trial court issued an entry that cancelled the scheduled trial date and directed New Plan to file a motion for summary judgment on its cross-claim for rent against Fleming Cos. New Plan filed its motion on March 27, 2001 and argued that Fleming Cos. owed $846,729.88 in rent.[5] Further, New Plan argued that, although it was entitled to cancel the lease for non-payment of rent, it would "defer exercising" that right unless Fleming failed to pay rent in the future.
The trial court issued its decision on October 24, 2001, and granted New Plan summary judgment against Fleming Cos. in the amount of $846,729.88 together with interest at the rate of one and a half percent (1½%) per month. Although the court did not rule on the issue of whether New Plan was entitled to retake possession of the premises as a result of Fleming Cos. current breach of the lease, the court did state that "New Plan may not terminate the lease and retake possession upon anyfuture default by Fleming to pay rent or other charges due under the lease until such time as the Fourth District Court of Appeals has an opportunity to rule on this Court's earlier decision." (Emphasis added.) These appeals followed.
Before we review the assignments and cross assignments of error on their merits, we must address a threshold jurisdictional problem. Appellate courts in Ohio have jurisdiction to review the final orders or judgments of inferior courts within their district. Section 3(B)(2), Article IV of the Ohio Constitution; R.C. 2501.02. A final, appealable, order is one which, inter alia, effects a "substantial right" and in effect determines the action. R.C. 2505.02(B)(1).
Further, when multiple claims and/or multiple parties are involved in an action, the provisions of Civ.R. 54(B) also factor into consideration. See In re Berman (1990), 69 Ohio App.3d 324, 328,590 N.E.2d 809; also see Karr v. JLH of Athens, Inc., Athens App. No. 99CA57, 2000-Ohio-1944; Gallucci v. Freshour (Jun. 22, 2000), Hocking App. No. 99CA22; Byers v. Coppel (Nov. 29, 1999), Ross App. No. 99CA2488. Civ.R. 54(B) states that a trial court may enter final judgment as to "one or more but fewer than all of the claims . . . only upon an expressdetermination that there is no just reason for delay." (Emphasis added.) Where applicable, the requirements of this rule must be met in order for a judgment to be deemed final and appealable. See State ex rel. Wrightv. Ohio Adult Parole Auth. (1996), 75 Ohio St.3d 82, 85, 661 N.E.2d 728;Chef Italiano Corp. v. Kent State University (1989), 44 Ohio St.3d 86,541 N.E.2d 64, at the syllabus. If a judgment is not final and appealable, then an appellate court has no jurisdiction to review the matter and it must be dismissed. Prod. Credit Assn. v. Hedges (1993),87 Ohio App.3d 207, 210, 621 N.E.2d 1360 at fn. 2; Kouns v. Pemberton
(1992), 84 Ohio App.3d 499, 501, 617 N.E.2d 701. With this in mind, we turn our attention to the proceedings below.
We note that the trial court's October 24, 2001 judgment did not resolve New Plan's demand to evict Fleming Cos. from the leased premises as a result of the failure to pay rent. Although the court held that New Plan could not re-take possession upon a "future default," the court did not, however, determine whether New Plan was entitled to that remedy as a result of the current breach. Because this remedy constituted a specific remedy requested by New Plan in its cross-claim, and because the court clearly found merit in that cross-claim, we believe that the trial court should have explicitly ruled on the claim that New Plan was entitled to evict Fleming Cos. and to take possession of the premises for the current breach.[6]
Moreover, neither the March 9, 2001 judgment nor the October 24, 2001 judgment explicitly resolved New Plan's counterclaim against Festival Foods. Thus, that claim is still technically pending.[7] Furthermore, the trial court did not explicitly find in either judgment that there is "no just reason for delay." While the October 24, 2001 judgment did state that such judgment "together with the decision and judgment entry dated March 9, 2001 shall constitute a final judgment pursuant to Rule 54," this language is insufficient to make the judgment final and appealable under the rule. Unless a judgment contains the required phrase "no just reason for delay," the order is interlocutory, subject to future modification and is neither final nor appealable. See 2 Klein Darling, Civil Practice (1997) 525, § 54-3; also see Noble v. Colwell (1989),44 Ohio St.3d 92, 96, 540 N.E.2d 1381; Stewart v. Midwestern Indemn. Co. (1989), 45 Ohio St.3d 124, 127, 543 N.E.2d 1200.[8]
For these reasons, we find no final appealable order present in this case. That portion of New Plan's cross-claim against Fleming Cos., which demands possession of the leased premises, and all of its counterclaim against Festival Foods, is still pending and must be resolved.[9] Until the trial court disposes of these claims, we are without jurisdiction to review these matters. Accordingly, the appeals are hereby dismissed.[10]
APPEAL DISMISSED.
 JUDGMENT ENTRY
It is ordered that the appeal be dismissed and that the parties share equally costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Scioto County Common Pleas Court to carry this judgment into execution.
A certified copy of this entry shall constitute that mandate pursuant to Rule 27 of the Rules of Appellate Procedure. Exceptions.
Harsha, J. Evans, J.: Concur in Judgment Opinion
[1] The lease provided that Wal-Mart could use the demised premises for "any lawful purpose."
[2] The letter also provided that it would "be void and of no effect if it [was] not executed by all parties hereto, including the Purchaser . . ." It appears from the copies of the letter in the record that New Plan never executed the document.
[3] The exclusive use provision of the lease also provided that, in the event of any violation of its terms by the lessor, all rental obligations thereunder would be "abated during the period of such violation."
[4] Various other issues were also addressed in the court's ruling including a finding that Festival Foods, as a sub-lessee, could not maintain an action against New Plan and a finding that it remained a genuine issue of material fact as to whether New Plan could reasonably rely on the estoppel letters to defend against a claim of breach. However, because the court concluded that no breach occurred by allowing Wal-Mart to sell food items, these other issues are largely irrelevant.
[5] An affidavit by Daniel S. Dornfeld, corporate counsel for New Plan, verified that this was the correct amount of rent due and owing under the lease.
[6] We presume that the court accepted New Plan's request to defer ruling on that remedy until such time as a future breach. However, until the court decides the issue one way or the other, that portion of the cross-claim is still technically pending. Should New Plan wish to negotiate with Fleming Cos. concerning whether it would execute on any judgment to retake the premises, then it is free to do so after that judgment is rendered and the proceeding is completed. The trial court must, however, rule on the request.
[7] We acknowledge that under Ohio law, there is no privity of contract between a sub-lessee and a lessor and, consequently, the lessor generally cannot maintain an action against the sub-lessee for breach of a covenant (e.g. payment of rent) contained in the original lease. See Fulton v.Stuart (1825), 2 Ohio 216, at the syllabus; Crowe v. Riley (1900),63 Ohio St. 1, 9, 57 N.E. 956; also see Cleveland v. A.J. Rose Mfg. Co. (1993), 89 Ohio App.3d 267, 271, 624 N.E.2d 245. Still, the trial court should rule on this issue rather than leave that portion of the counterclaim unresolved. Furthermore, New Plan demanded judgment to have Festival Foods evicted. Even if New Plan cannot maintain an action for rent against Festival Foods, Festival Foods is still in possession of the premises and is subject to eviction for failure to pay rent. SeeCleveland, supra at 272. Thus, the trial court must decide that portion of the counterclaim before this court is vested with jurisdiction to consider this case.
[8] This Court has frequently referred to the "no just reason for delay" phrase as the "magic language" from Civ.R. 54(B). See Cokonougherv. Loring (Mar. 5, 2001), Hocking App. No. 99CA20; Max J. Colvin SonsTrucking. v. Phillip Diniaco Sons, Inc. (Jul. 29, 1988), Washington App. No. 87CA18; Rainsford v. Royal Insurance Co. of America (Feb. 27, 1987), Athens App. No. 1294.
[9] We hasten to add that simply inserting the "no just reason for delay" language into another judgment will not make this case immediately appealable. Although such language would remedy the pending counterclaim, it would not affect the issues that remain to be determined in the cross-claim. Civ.R. 54(B) applies to claims rather than issues or remedies that are a part of that claim and, thus, a finding of "no just reason for delay" would not make the case appealable while a portion of the claim was still pending. See Hitchings v. Weese (1997),77 Ohio St.3d 390, 391, 1997-Ohio-290, 674 N.E.2d 688 (Resnick, J. Concurring). In other words, the trial court must resolve whether New Plan is entitled to re-take possession of the leased premises before this case is ripe for appeal.
[10] After the trial court enters its final judgment in the case sub judice, and after a party files a timely notice of appeal, this court will accept the briefs previously filed and submitted if the parties so desire and agree.